## APRIL TERM, 1887.

[No. 1237.]

### C. H. PATCHEN, APPELLANT, v. J. V. KEELEY ET AL., RESPONDENTS.

STATEMENT ON APPEAL—WHEN MAY BE SETTLED.—A party having the right to appeal may, within the statutory time, file his statement on appeal and have it settled by the judge, even though the appeal be perfected before the statement is prepared. *James* v. *Leporte ante,* 174, affirmed.

EVIDENCE—HARMLESS ERRORS.—Error in excluding evidence is cured by its subsequent admission.

MINING CLAIMS — TRESPASS — DAMAGES.— In an action for trespass upon plaintiff's mine, the wrongful entry is the gist of the action, and evidence of damage to the claim outside of ores converted to defendants' use is not admissible unless specially pleaded.

IDEM.—The evidence of damages accruing between the date of the commencement of the action and the date of trial is not admissible.

NONSUIT—PRESUMPTIONS.— Upon appeal from an order granting a nonsuit, it is the duty of the court to take as proven every fact which the plaintiff's evidence tended to prove, and which was essential to his recovery, and give him the benefit of all legal presumptions arising therefrom.

IDEM—MINING CLAIMS—PRIOR LOCATION—EVIDENCE.—Testimony to the effect that plaintiff's claim was located upon the old Washington and Creole mining claim was not evidence of a valid prior location, or even of an attempted prior location under the mining laws.

IDEM—POSSESSION OF MINING CLAIM—TITLE—EVIDENCE.—The evidence for plaintiff tended to show that plaintiff had discovered and located his mining claim under the laws of the United States and the Ely mining district, and was in actual possession thereof up to the date of defendants' alleged wrongful entry. Defendants did not attempt to inquire into the nature of plaintiff's possession upon cross-examination, nor show title in themselves: *Held*, that plaintiff's evidence entitled him to maintain the action, and that a nonsuit was improperly granted.

NOMINAL DAMAGES—SCREENINGS.— Plaintiff was entitled to nominal damages, even if it should be held that the "screenings," whose removal constituted the main injury to plaintiff, did not pass to him upon his location of the claim.

APPEAL from the District Court of the Sixth Judicial District, Lincoln County.

The facts are stated in the opinion, with the exception of the question raised as to the statement on appeal, and this is embodied in the first head-note.

*Trenmor Coffin* and *Geo. S. Sawyer*, for Appellant:

I. The court erred in excluding the evidence of plaintiff as to his actual occupation and possession of the *locus in quo.* Actual possession is *prima facie* evidence of title, and, even if wrongful, is sufficient to base an action upon as against a naked trespasser, and no rights are claimed by defendants in their answer. (*Attwood* v. *Fricot*, 17 Cal. 38;[1] *English* v. *Johnson*, 17 Cal. 107;[2] *Hess* v. *Winder*, 30 Cal. 349; *Sears* v. *Taylor*, 4 Col. 38; *Campbell* v. *Rankin*, 99 U. S. 261; *Burt* v. *Panjaud*, 99 U. S. 180; *Courchaine* v. *Bullion M. Co.*, 4 Nev. 369.)

II. The court erred in excluding the evidence offered by plaintiff as to the damage to the realty, outside of what had been taken away. In *trespass quare clausum fregit* the injury to the realty is the gist of the action. (2 Gr. Ev., secs. 613 et seq.; *Attwood* v. *Fricot*, 17 Cal. 38.[3])

III. The court should have allowed proof of damages up to

---

1  76 Am. Dec. 567.          2  76 Am. Dec. 574.          3  76 Am. Dec. 567.

the time of trial, when offered by plaintiff. (2 Gr. Ev., sec. 268 a; *Hicks* v. *Herring,* 17 Cal. 566; *De La Guerra* v. *Newhall,* 53 Cal. 141.)

IV. A defendant in trespass cannot show title in a third party, unless he pleads it and justifies under it. (2 Gr. Ev., sec. 543, note 3; 2 Gr. Ev., sec. 274; 2 Estee's Pl. 562, note 5; 2 Estee's Pl. 412, note 61 et seq.)

V. The court erred in sustaining the defendant's motion for a nonsuit. Both actual and constructive possession of the *locus in quo* was shown by the plaintiff. Such possession gives a *title* as against all persons except the government. (*420 M. Co.* v. *Bullion M. Co.,* 9 Nev. 249; *420 M. Co.* v. *Bullion M. Co.,* 3 Saw. 635; Copp's Mineral Lands, 357; *Trimble* v. *Woodhead,* 102 U. S. 649.)

VI. The breaking of the close, the entry and extraction and reductions of ores and minerals, without the leave or license of plaintiff, was conclusively shown, and *some* damage must necessarily follow. (*Empire G. M. Co.* v. *Bonanza G. M. Co.,* 67 Cal. 406.)

Everything pertaining to the ground is a part thereof. (2 Bla. Com., chap. 2; *Vansickle* v. *Haines,* 7 Nev. 283, et seq.; *Treadway* v. *Sharon,* 7 Nev. 41; *Rogers* v. *Cooney,* 7 Nev. 213; *Bullion M. Co.* v. *Crœsus G. & S. M. Co.,* 2 Nev. 184; *Moore* v. *Smaw,* 17 Cal. 201, 224;[1] *Brown* v. *Quartz M. Co.,* 15 Cal. 158.)

*Baker & Wines,* for Respondents:

I. The pretended statement on appeal was filed and served, and settled by the judge after the appeal had been taken. A perfected appeal gives the court jurisdiction. If this court has jurisdiction, there can be none at the same time vested in the lower court. (*Gaples* v. *C. P. R. R. Co.,* 6 Nev. 265; *Lamburth* v. *Dalton,* 9 Nev. 64; *Dean* v. *Pritchard,* 9 Nev. 232; *Thomas* v. *Sullivan,* 11 Nev. 282.)

II. Actual possession of a mining claim will not be sufficient in the absence of a compliance with the local rules and regulations. The exclusion of the evidence of possession was not an error prejudicial to the appellant. (*Golden Fleece G. & S. M. Co.* v. *The Cable Con. G. & S. M. Co.,* 12 Nev. 312.) The cases referred to by appellant from California were based upon a state of facts existing prior to the passage of any mining legislation by Congress.

1  79 Am. Dec. 123.

III. Under the pleadings in this case we assert that respondents could have shown title in themselves, or in the Meadow Valley Mining Company, and could have followed this with evidence showing a rightful possession in themselves under such company. This would not, under the rules of pleading in this state, have been new or affirmative matter. (*Jackson* v. *The Feather River W. Co.*, 14 Cal. 19; *Woodworth* v. *Knowlton*, 22 Cal. 164; *Wilson* v. *Cleveland*, 30 Cal. 192; *Hawkins* v. *Borland*, 14 Cal. 413; *Marshall* v. *Shafter*, 32 Cal. 177; *Stone* v. *Bumpus*, 40 Cal. 428; *Bruck* v. *Tucker*, 42 Cal. 346; *Wheeler* v. *Billings*, 38 N. Y. 263; *Greenfield* v. *Mass. Ins. Co.*, 47 N. Y. 430; *Mather* v. *Hutchinson*, 25 Wis. 27; *Lain* v. *Shepardson*, 23 Wis. 224; Bliss, Code Pl., sec. 327.)

IV. Titles are not created or defeated by presumptions of the character relied on by appellant. Upon the general proposition, we cite *Belk* v. *Meagher*, 104 U. S. 279. As to presumptions, we refer generally to Whar. Ev., secs. 1284, 1285, 1286; *Currier* v. *Gale*, 9 Allen, 522; *Magee* v. *Scott*, 9 Cush. 148;[1] *Hansen* v. *Chiatovich*, 13 Nev. 395.

By the Court, LEONARD, C. J.:

This was an action of trespass *quare clausum fregit*. Plaintiff alleged in his complaint that since January 1, 1883, he had been, and then was, the owner and in possession of the Gold Lode mining claim, particularly described; that on the ninth day of March, 1885, without leave or license of plaintiff, defendants broke and entered said described close, and commenced to dig up, reduce, and remove, and had ever since continued to do so, large quantities of earth, rock, and earthy material containing gold, silver, lead, and other metals of great value, and converted and were converting them to their own use and benefit, to the damage of plaintiff in the sum of ten thousand dollars. Defendants' answer was a specific denial of each allegation contained in the complaint. At the trial, to sustain the allegations of his complaint, plaintiff introduced evidence of his title and possession subsequent to January 1, 1883, and in support of the charge of trespass, together with the damages resulting therefrom. Certain exceptions were taken by plaintiff to the court's rulings, and at the close of his case in chief, upon the motion of defendants, the court granted a nonsuit. Plaintiff appeals from that order, and the judgment entered thereon.

[1] 55 Am. Dec. 49.

1. We are satisfied with the decision in *James* v. *Leport, ante,* 174, and respondents' objections to a consideration of the statement on appeal are answered by that decision.

2. If the court erred in excluding the notice of the location of the Gold Lode claim when it was first offered in evidence, the error was corrected by its subsequent admission, before plaintiff rested.

3. After plaintiff had introduced in evidence the mining laws of Ely mining district, wherein the Gold Lode is situated, and after his notice of location had been excluded as evidence, he offered, and endeavored to prove, his actual possession and occupation of said mining claim subsequent to January 1, 1883, continuously to the time of trial. Defendants objected on the ground that plaintiff was precluded from showing actual possession not in conformity with the local rules and regulations in evidence; and counsel for respondents have argued in this court that actual possession was insufficient, in the absence of a compliance with the local rules and regulations. We think the court erred in excluding evidence of actual possession up to the time the action was commenced, for reasons that will subsequently appear; still, for the purposes of this appeal, plaintiff was not injured by the exclusion at that time, because afterwards, and without objection, plaintiff testified that he had been in full charge and control of the entire Gold Lode claim since January 1, 1883; and two witnesses testified in his behalf that they had worked continuously on the claim for plaintiff since the fall of 1883, during which time plaintiff had full possession, charge, and control of the claim, and had expended, in work and machinery thereon, several thousand dollars. So, if proof of actual possession was admissible, and important to plaintiff, it is still true that, at the time the motion for nonsuit was made and granted, there was evidence of such possession.

4. We are of opinion that, under the allegations of the complaint, plaintiff was not entitled to show damage to the mining claim outside of ores converted. The gist of the action is the alleged unlawful entry upon the mining claim in question, and the digging and removal of the ores are mere matters of aggravation. (*Pico* v. *Colimas,* 32 Cal. 580.) Of the same nature is an injury to the mine beyond that caused by taking the ores. Beyond the value of the ores taken, the mine was not neces-

sarily injured by the acts complained of. Such damages are special, and must be stated in the complaint. (1 Suth. Dam. 763; *Knapp* v. *Slocomb*, 9 Gray, 76; *Sampson* v. *Coy*, 15 Mass. 494; *Baldwin* v. *Railroad Corp.*, 4 Gray, 335.)

5. The court did not err in refusing to allow proof of damages between the commencement of the action and the date of trial. Such damages were not the natural and necessary result of the acts complained of in the complaint. (Mayne, Dam. 51; *Warner* v. *Bacon*, 8 Gray, 406;[1] *Town of Troy* v. *Railroad Co.*, 3 Fost. 102; 1 Sedg. Dam. 190.)

6. The grounds of the motion for nonsuit were as follows: " *First*—The evidence on the part of plaintiff is insufficient to maintain the action. *Second*—It is shown from the evidence that the ore taken and removed by defendants was waste and screenings which were left in the slopes and chambers of the Washington ledge by the Meadow Valley Company, and were, when taken and removed by defendants, personal property, detached from the freehold, and not a part or parcel of any mining claim located or claimed by plaintiff. *Third*—There is no evidence before the court that the plaintiff discovered any ledge, lode, or deposit of ore, within the boundaries of this claim, prior to the date of its location by him. *Fourth*—The evidence shows that the mining claim called the Gold Lode was located upon the Washington and Creole mining claim, and there is no evidence before the court that, at the date of said location, the Washington and Creole mining claim was either abandoned or forfeited by its owners, or that the same was subject to relocation as a part of the public domain. *Fifth*—Plaintiff has shown by his evidence that the defendants entered upon the ground from which these screenings were taken, in good faith, believing it to be a part of the Meadow Valley mine, and that the value of the ore removed was less than the cost of reducing it to coin, and that no damage has accrued to plaintiff."

In considering the court's ruling granting the nonsuit, we must take as proven every fact which the plaintiff's evidence tended to prove, and which was essential to his recovery (*Brown* v. *Warren*, 16 Nev. 231; *Dow* v. *Gould & C. S. M. Co.*, 31 Cal. 650), and give him the benefit of all legal presumptions arising from the evidence.

Was plaintiff's evidence insufficient to maintain the action,

---

1  69 Am. Dec. 253.

for the reasons stated in the second, third, fourth, and fifth. grounds of the motion? As we have seen, the gist of the action was the breaking and entering of plaintiff's close, to wit, the Gold Lode mining claim, and the digging and conversion of ores were mere matters of aggravation. The said close embraced the entire land within plaintiff's boundaries, and not. merely the Gold Lode, included therein. (*Golden Fleece* v. *Cable Con. Co.*, 12 Nev. 329; *Gleeson* v. *Martin White M. Co.*, 13 Nev. 456; *Mt. Diablo M. & M. Co.* v. *Callison*, 5 Saw. 455.) There was uncontradicted evidence that plaintiff located the. claim in question, January 1, 1883, according to the mining laws of the United States, and the local rules and regulations of Ely mining district, and held and worked it in the usual and customary mode of holding and working similar claims in the vicinity thereof. Such holding and working constitute occupation and adverse possession under the statute. (Gen. Stat. 3632.) There was no evidence that any prior location, valid or otherwise, had been made of the claim in question. The only evidence upon that point was that plaintiff's claim was located upon the old Washington and Creole mining claim. It might have been so called without any valid location under the mining laws; and there can be no relocation unless there has been a prior valid location, or something equivalent, of the same property. (*Belk* v. *Meagher*, 104 U. S. 289.)

Plaintiff did not set up title as a *relocator*, and thus impliedly admit the validity of a prior location. In his notice of location he claimed the ground as a discoverer and *locator;* and he testified that he *located* the claim January 1, 1883. Testimony to the effect that the Gold Ledge was located upon the old Washington and Creole mining claim was not evidence of a valid prior location, or even of an attempted prior location, under the mining laws. It is true that, in his first brief, counsel for appellant, in discussing another question, asserts that "the proof is uncontradicted that the Gold Lode mining claim was the old Washington and Creole ledge, which was well known, and which had been abandoned and relocated by plaintiff"; but he retracts the last part in his second brief. At any rate, he was mistaken at first, and we must look at the record to ascertain the nature of the evidence, rather than the opinion of counsel.

There was uncontradicted evidence that plaintiff had full

charge, control, and possession of the entire claim during the whole period between his location and defendant's entry; that he commenced work thereon in the fall of 1883, put machinery thereon, and kept two men constantly employed until the trial; that when he was in possession as stated, defendants, in March, 1885, entered, dug, and converted the ores found in the waste rock left in the stopes and chambers by the Meadow Valley Company, years before plaintiff's location. There was no evidence that plaintiff did not hold the claim according to law, and the rules and customs of Ely mining district; and, if he was in possession at the time of defendants' entry, the presumption is, that he did so hold it, upon the same principle that the possessor of any real estate is presumed to be the owner thereof until the contrary is shown. (*Robertson* v. *Smith*, 1 Mont. 414; *Sears* v. *Taylor*, 4 Col. 42.) There was no evidence that the defendants had title to the *locus in quo*, or the ores taken. or possession, or right of possession thereof. They stated at the trial that, when at work, they thought they were on a ledge which, prior to plaintiff's location, had been claimed and worked by the Meadow Valley Company, but they did not connect themselves with that company, or any person or company claiming, or having title or possession; nor did it appear that the Meadow Valley Company ever had any title, or that it claimed or had any possession for more than two years prior to the trespass complained of or subsequent to plaintiff's location.

In view of the above facts and conclusions, no one of the grounds stated, nor all combined, justified the order of nonsuit. Plaintiff's evidence was sufficient to maintain the action. In addition to plaintiff's location, the testimony showed that he was in the actual possession of the entire claim. He and two other witnesses so testified. They were not questioned as to the nature of their possession by defendants.

In *Brown* v. *Benjamin*, 8 Allen, 197, which was an action of trespass *quare clausum*, plaintiff testified that he was in the occupation of the *locus in quo* at the time of the alleged trespass upon it, and did not attempt to show any title thereto, besides actual possession. Defendant did not cross-examine plaintiff concerning the nature of his possession. The court said: "As no inquiry was made of the plaintiff, as there might have been, respecting the nature of his possession, and as there was no evi-

dence that the defendant was not a mere stranger and wrong-doer, we cannot sustain the ruling that the evidence showed that the plaintiff could not sustain this action; for it is settled law that actual possession of real estate is sufficient to enable the party in possession to maintain trespass *quare clausum fregit* against a stranger, and every one must be deemed a stranger who cannot show any title or elder possession." The rule is the same in relation to personal property. (Wood, Pr. Ev., secs. 60, 61.)

According to plaintiff's evidence, defendants were mere strangers and tort-feasors; and in order to recover, plaintiff was only obliged to prove a rightful possession as against them. (*Rogers* v. *Cooney*, 7 Nev. 217.)

"In this action the defendant may dispute the plaintiff's possessory right by showing that the title and possessory right are vested in himself, or another under whom he claims, or whose authority he has. But, if the plaintiff prove possession merely, that will suffice, if the defendant cannot show a superior right in himself, or another under whom he can justify. It is true, the plaintiff must prove such lawful possession as the defendant had no right to disturb, but any possession is legal possession as against a wrong-doer." (*Reed* v. *Price*, 30 Mo. 446.)

"In an action of trespass *quare clausum fregit*, the defendant can never plead soil and freehold in a third person, without alleging a license from him; because a party having actual possession, but not a right of possession, has a good title against a party having none." (*Slater* v. *Rawson*, 6 Met. 445. And see *First Parish in Shrewsbury* v. *Smith*, 14 Pick. 301.)

Indeed, counsel for respondents admit that actual possession of such real estate as farms and timber land is *prima facie* evidence of title, and is sufficient as against a trespasser; but they claim that since the passage of the mining laws by Congress, it is not so in case of a mining claim, where it is shown that there are local rules and regulations which require the doing of other acts besides the taking of actual possession. No authorities are cited, or reasons advanced, in support of this claim. We may admit that any competent person may *locate*, according to law, a mining claim in the actual possession of another, which is not affected at the time by a valid prior location, if this can be done peaceably, and without force, and that, as against such a location, proof of a prior actual possession

would go for naught. The reason is that, under the laws of Congress, any competent person may locate, peaceably, any vacant mineral land, and as to him it is vacant in law until a valid location is made. (*Bell* v. *Meagher*, 104 U. S. 286; *Hors-well* v. *Ruiz*, 67 Cal. 112.) But, assuming the facts to be as they appear in the record, we are not dealing with that kind of a case.

Judge Story said, in *Ricard* v. *Williams*, 7 Wheat. 107: "The law will never construe a possession tortious unless from necessity. On the other hand, it will consider every possession lawful, the commencement and continuance of which is not proved to be wrongful."

We can see no reason why a stranger may trespass upon a mining claim held only by actual possession, any more than he can upon farming lands so held, where no attempt has been made to secure the government title. They are both valuable to the possessors, and in one case as much as in the other presumption of title follows possession.

In *Lebanon M. Co.* v. *Consolidated Rep. M. Co.*, 6 Col. 381, it is said that, in possessory actions, proof of possession of a mining claim is always *prima facie* evidence of title. It is presumptive of the ownership declared on, and, until overcome by evidence of a superior character, is sufficient to maintain an action. The same doctrine is held in *Sears* v. *Taylor*, 4 Col. 38 (decided in 1877).

In *Campbell* v. *Rankin*, 99 U. S. 261, an action for damages to a mining claim, decided in 1878, the court said: "In actions of ejectment or trespass *quare clausum fregit*, possession by the plaintiff at the time of eviction has always been held *prima facie* evidence of legal title, and, as against a mere trespasser, is sufficient. (2 Greenl. Ev. 311.) If this be the law when the right of recovery depends on the strict legal title in the plaintiff, how much more appropriate is it as evidence of the superior right of possession under the acts of Congress which respect such possession among miners."

We quote also from *Funk* v. *Sturrett*, 59 Cal. 614: "The act of Congress in question (section 2324, Rev. Stat.) provides that 'the location must be distinctly marked on the ground, so that its boundaries may be readily traced.' Since the passage of that act, a party can show a right to the possession of a mining claim (where no patent has been issued) only by showing an

actual *possessio pedis* as against a mere wrong-doer, or by show-
ing a compliance with the requisites of the act of Congress."
(See also *Belk* v. *Meagher, supra,* 288.)

In *Noyes* v. *Black,* 4 Mont. 534 (decided in 1883), plaintiffs
attempted, by virtue of possession alone, to hold a mining
claim against a valid location. It was held that they could
not do so; but, said the court, "as against a stranger, posses-
sion is sufficient to maintain trespass or ejectment."

We conclude, from reason and authority, that in this action
the presumptions arising from possession, and the rights given
thereby, are the same as they would have been if the *locus in
quo* had been farming or timber land.

We will now consider the different grounds of the motion in
the light of the preceding principles and conclusions. Al-
though, upon the evidence before us, we have no doubt that
the screenings left in the stopes and chambers as waste rock
by the Meadow Valley Company were a part of the mining
claim located by plaintiff (*Noble* v. *Sylvester,* 42 Vt. 149; *Brown*
v. *'49 & '56 Quartz M. Co.,* 15 Cal. 158), and that a patent from
the government conveying the claim would carry the screen-
ings, yet an opposite conclusion would not justify the nonsuit.
Plaintiff was entitled to recover nominal damages, at least, for
the trespass upon his possession, together with such other dam-
ages as were shown to have been suffered by reason of the acts
alleged by way of aggravation. (2 Wat. Tresp., secs. 999,
1000, 1090; *Parker* v. *Griswold,* 17 Conn. 302;[1] *North Noonday
Co.* v. *Orient Co.,* 6 Saw. 319; 1 Add. Torts, 322; *Empire G.
M. Co.* v. *Bonanza M. Co.,* 67 Cal. 406.)

As to the third ground, it is enough to say that plaintiff was
not obliged, as against defendants, to prove any better title
than actual possession gave him. It was not necessary for him
to prove the discovery of any lode within the boundaries of his
claim prior to location. In a word, in order to make a *prima
facie* case against defendants, having shown possession, plaintiff
was not obliged to prove a valid location. Defendants were not
in position to assail plaintiff's title. It was no answer to
plaintiff's proof of possession to say that the *title* was in the
government, or a third person, and not in plaintiff. (*Shrews-
bury* v. *Smith,* 14 Pick. 302; *Keane* v. *Cannovan,* 21 Cal.
305;[2] *Branch* v. *Doane,* 18 Conn. 242; *Inhabitants of Barnstable*
v. *Thacher,* 3 Met. 242; *Hughes* v. *Graves,* 39 Vt. 359; *Willis-*

---

1 42 Am. Dec. 739.          2 82 Am. Dec. 738.

*ton* v. *Morse*, 10 Met. 17; *Courchaine* v. *Bullion M. Co.*, 4 Nev. 369.) Besides, a location is made valid by the discovery of a lode at any time after the location, if such discovery is made before any rights are acquired in the same claim by another person. (*North Noonday M. Co.* v. *Orient M. Co.*, 6 Saw. 300; *Zollars & Highland Chief Con. M. Co.* v. *Evans*, 2 McCrary, 43.)

A sufficient answer to the fourth ground has already been made; that is to say, there was no evidence that there had ever been a valid location of the Washington and Creole claim; but, in addition, what we first said in answer to the third ground is equally applicable here.

The fifth ground was without merit. Plaintiff was entitled to recover nominal damages in any event, and whether defendants could demand a deduction of reasonable working expenses depended upon facts that should have been left to and decided by a jury. We need not decide what would be the legal result if defendants converted the ores under a *bona fide*, but mistaken, belief that they had a right to appropriate them; especially if they had no fair reason in law to so believe. If they were willful trespassers (a question for the jury), no deductions were allowable for working expenses. In other words, in that case plaintiff was entitled to the enhanced value of the property taken. (*Wood m-Ware Co.* v. *U. S.*, 106 U. S. 432; *Silsbury* v. *McCoon*, 3 N. Y. 381;[1] *Nesbitt* v. *St. Paul Lumber Co.*, 21 Minn. 491; 1 Suth. Dam. 716.)

It would be manifestly improper for us to draw any conclusions from the evidence before us in relation to defendants' motives, but we are satisfied that, upon plaintiff's case in chief, it was the duty of the court to submit the question of damages to the jury.

The order of the court granting a nonsuit, and the judgment entered thereon, are reversed, and the cause remanded.