Valerie A. COLLINS, Plaintiff–Appellant and Cross–Appellee,

v.

COLORADO MOUNTAIN COLLEGE, a Colorado Junior College District; and Colorado Mountain College Board of Trustees, a Colorado Junior College, Defendants–Appellees and Cross–Appellants.

No. 00CA2147.

Colorado Court of Appeals, Div. II.

Feb. 28, 2002.

Rehearing Denied March 28, 2002.

Certiorari Denied Oct. 21, 2002.

Colorado Education Association, Martha R. Houser, Gregory J. Lawler, Cathy L. Cooper, Sharyn E. Dreyer, Denver, Colorado; United Food & Commercial Workers Union, Local No. 7, Bradley C. Bartels,

Wheat Ridge, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Hall & Evans, L.L.C., Daniel R. Satriana, Jr., Denver, Colorado; Beattie & Chadwick, Glenn D. Chadwick, Glenwood Springs, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge PLANK.

In this employment termination dispute, plaintiff, Valerie A. Collins, appeals from the trial court's judgment in favor of defendants, Colorado Mountain College (CMC) and Colorado Mountain College Board of Trustees (the Board). CMC and the Board cross-appeal the order denying an award of attorney fees and costs. We affirm.

Collins was employed by CMC at its Alpine campus in Steamboat Springs as a full-time financial aid specialist. She also worked under a temporary contract as a part-time adjunct instructor.

In the fall of 1998, Collins's son, a student at the Alpine campus, was accused of certain disciplinary infractions. In the ensuing investigation, the director of financial aid reviewed the son's financial aid status and discovered that Collins had processed his financial aid application. CMC placed Collins on suspension with pay pending completion of an investigation and a predisciplinary hearing.

After further investigation, CMC recommended termination of Collins's employment. CMC placed her on suspension without pay, gave her notice of its recommendation for termination, and gave her the opportunity to appeal the recommendation through CMC's internal grievance procedure. The temporary teaching contract expired shortly thereafter.

CMC's policy manual provides for a three-step grievance procedure for non-faculty members. Collins waived Level I of the grievance procedure, a review by her immediate supervisor.

Level II consists of review by a Peer Review Committee (PRC). The PRC held a hearing at which Collins was represented by independent legal counsel. Counsel for each

side had the opportunity to make arguments, present witnesses and evidence, and cross-examine witnesses. After the hearing, the PRC recommended termination of Collins's employment as a financial aid specialist based on four of the five grounds asserted by CMC, finding that any one of those four would be sufficient cause for termination. Specifically, the PRC found that: (1) Collins ignored a conflict of interest directive against processing financial aid applications of relatives; (2) Collins improperly awarded her son financial aid on the basis that his legal guardian was his grandmother, Collins's mother; (3) Collins inappropriately awarded her son, then a recent high school graduate, a diversity grant that is intended for first-generation college students or students who have left a job to return to college to pursue a new career; and (4) in violation of CMC and federal financial aid policies, Collins ignored conflicting information on her son's application for federal student aid and his admissions applications. The PRC concluded that Collins's actions showed incompetence, inadequate job performance, neglect of duty, dishonesty, and insubordination.

Collins then appealed to Level III, a review and hearing by the CMC president or designee. Under CMC policy, the decision at Level III of the grievance procedure is final and binding. After hearing the parties' oral arguments and reviewing the testimony and exhibits presented at Level II, the Level III hearing officer upheld the findings made by the PRC. The hearing officer characterized Collins's actions as a deliberate attempt to mislead CMC for her son's personal benefit and concluded that Collins failed to represent herself in an honest manner in her working relationship with CMC. Finding that the position of a financial aid specialist requires trustworthiness, integrity, and honesty, the hearing officer determined that termination of employment was appropriate. CMC then terminated Collins's employment.

Collins did not appeal this decision under C.R.C.P. 106(a)(4). Instead, she filed an action in the district court alleging two claims of breach of contract and one claim of denial of her right to equal protection pursuant to article II, § 9 of the Colorado Constitution.

The trial court granted summary judgment as to both breach of contract claims and the equal protection claim.

Collins appeals only the judgment with regard to the breach of contract claims. She does not appeal the judgment entered dismissing her equal protection claim. CMC and the Board cross-appeal the denial of attorney fees.

I.

Collins first contends that the trial court erred in granting summary judgment on her claim for breach of contract alleging insufficient cause for the termination from her position as a financial aid specialist. Specifically, she argues that her employment contract requires judicial review of the substantive grounds for termination. We disagree.

Summary judgment is warranted only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against that party. *Churchey v. Adolph Coors Co., supra.*

If an employee seeks to rely on an employee handbook or other written policy of the employer as the basis for an implied employment contract claim, the employee must accept the whole of that policy. The employee may not accept the favorable portions of the policy and reject the unfavorable portions. *Floyd v. Coors Brewing Co.*, 952 P.2d 797 (Colo.App.1997), *rev'd on other grounds*, 978 P.2d 663 (Colo.1999).

Here, the parties do not contest that CMC's procedures gave rise to an implied contract. We conclude that such a contract merely allows Collins to enforce CMC's grievance policies and procedures. *See Floyd v. Coors Brewing Co., supra.* However, Collins does not contend that CMC did not follow its grievance policies and procedures.

Nonetheless, Collins argues that judicial review of the substantive basis of the termination is permissible because CMC's termination policy provides that the college's ultimate decision on termination is "final," not "final and binding." We are not persuaded.

■ The interpretation of written documents presents a question of law subject to de novo review. *Weisbart v. Agri Tech, Inc.,* 22 P.3d 954 (Colo.App.2001). "Final" means "not to be altered or undone; conclusive, decisive." *Webster's Third New International Dictionary* 851 (1981).

In support of her contention that she is entitled to judicial review, Collins relies on *Vanderhurst v. Colorado Mountain College District,* 16 F.Supp.2d 1297 (D.Colo.1998), *aff'd on other grounds,* 208 F.3d 908 (10th Cir.2000). In that case, as here, the plaintiff brought a breach of contract claim for wrongful termination of employment. The plaintiff neither challenged the defendant's internal grievance procedures nor alleged that the defendant did not follow those procedures. Rather, the plaintiff challenged the defendant's determination that there were substantive grounds for termination. The court denied the defendant's motion for summary judgment, ruling that there were genuine factual disputes as to whether the plaintiff's conduct violated the defendant's policies such that termination was warranted.

We find *Vanderhurst* distinguishable because it is not clear from that opinion that the CMC grievance procedures then in effect provided that the review was "final." If the grievance procedures in that case were identical to those in this case, we decline to follow the reasoning in *Vanderhurst. See First National Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973)(state court is not bound by federal court interpretation of state law).

■ Here, to the extent that CMC's grievance procedure led to an implied contract, the parties implicitly agreed that the grievance procedures provided a final and binding determination of whether termination of employment was appropriate. Moreover, the fact that the termination policy states that the decision on termination is final, but does not specifically state that the decision is binding, does not suggest that judicial review of the termination is permissible. To hold otherwise would be to violate the principle of freedom of contract. *See Marez v. Dairyland Ins. Co.,* 638 P.2d 286 (Colo.1981)(refusing to adopt rule that would in effect rewrite terms of parties' contract).

Thus, we conclude that there were no genuine issues of material fact as to the first breach of contract claim. Accordingly, the trial court did not err in granting summary judgment on that claim.

### II.

Collins next contends that the trial court erred in granting summary judgment on her claim for breach of contract as to the termination from her adjunct instructor position. Again, we disagree.

Collins's contract for the adjunct instructor position provided:

This contract is for part-time, temporary employment only. Nothing in this contract is meant to create the expectation of continuing or future employment or property rights. THIS CONTRACT IS AT WILL and may be terminated at the discretion of the College at any time, with or without cause and with or without notice. I acknowledge that I am not a full-time faculty member of the College, and that my benefits and rights under College Policy are not those of a Full-time Faculty member.

■ An employee who is hired in Colorado for an indefinite period of time is an at-will employee, whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action. *Crawford Rehabilitation Services v. Weissman,* 938 P.2d 540 (Colo.1997). However, an at-will employee may be able to enforce the termination procedures in an employee manual under either an implied contract theory or a promissory estoppel theory. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

■ Here, the contract unambiguously declares that the employment is at-will. In

addition, the policy manual expressly states that CMC's grievance procedure is not available to temporary employees or employees who are employed under a temporary letter of agreement. Therefore, contrary to Collins's argument, she could not reasonably have expected CMC to follow its grievance procedure as to the adjunct instructor position. Thus, the grievance procedures did not create an implied contract as to the adjunct instructor position. *See Continental Air Lines, Inc. v. Keenan, supra.* Accordingly, we affirm the trial court's summary judgment on Collins's second claim for breach of contract.

### III.

On cross-appeal, CMC contends that it is entitled to attorney fees because Collins's claims were frivolous and groundless. We are not persuaded.

The court shall award attorney fees if an attorney or party brought or defended an action that lacked substantial justification. If a claim is substantially frivolous or substantially groundless, it lacks substantial justification. Section 13–17–102(4), C.R.S.2001.

A claim is frivolous if the proponent can present no rational argument based on the evidence or law in support of the claim. A claim is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984).

Here, Collins made rational arguments based on valid legal authority. Therefore, although we disagree with her contentions, we cannot conclude that they are frivolous or groundless. Accordingly, the trial court's denial of attorney fees was proper.

The judgment and the order denying attorney fees are affirmed.

Judge MARQUEZ and Judge ROY concur.